Keith A. Pitt, OSB No. 973725
keith@slindenelson.com
Philip Nelson, OSB No. 013650
phil@slindenelson.com
SLINDE NELSON
425 NW 10th Avenue Suite 200
Portland, OR 97209
Telephone: (503) 417-7777
   *Of Attorneys for Defendant Heather Schiappacasse*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VERITAS ALLIES LLC, an Oregon Limited Liability Company, | Case No.: 3:22-cv-00903-YY |
| Plaintiffs, | **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CYNTHIA FREE, an individual, and HEATHER SCHIAPPACASSE, an individual, | |
| Defendants. | |

Defendant Heather Schiappacasse ("Defendant" or "Ms. Schiappacasse"), by and through

her attorneys, Slinde Nelson, respectfully submits this Reply to Plaintiff Veritas Allies, LLC's

("Plaintiff" or "Veritas") Response to Defendant's Motion for Summary Judgment in the above-

captioned matter.

In support of this Reply, Defendant relies upon the Court record/file herein, the additional

declaration(s) and exhibit(s) supplied herein, and the attached Memorandum of Law, all

incorporated by this reference.

Page 1 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Stated in the simplest of terms: The facts matter. The law matters.  What Plaintiff asserts are the "undisputed" facts are, in truth, not helpful to Plaintiff.

As noted in her moving papers, this is a spite suit—by former romantic partner, David Vizzini—where Plaintiff is using this litigation to continue <u>Vizzini's</u> gaslighting behavior(s), now punctuated with cliché male-centric caricatures of Ms. Schiappacasse.[1]

It should not escape notice that Plaintiff's response does <u>*not*</u> attempt to substantively refute the true genesis of this litigation,[2] or the absence of "suit related/forum related" jurisdictional facts noted in Ms. Schiappacasse's motion.[3]

Indeed, that Plaintiff seeks to support the exercise of jurisdiction primarily through text messages between Ms. Schiappacasse and Vizzini's former wife, Cynthia Free, and Vizzini's other romantic interest, Jean Gordon, underscores not only (1) the true nature of this litigation (it

---

[1] *See e.g.,* Pl. Resp., Pg. 15:12-13 ("The communication and coordination with Ms. Free was compulsive and unhinged.")

[2] Similarly, Plaintiff's reference in its Response Brief to purported outstanding "discovery" between the parties will neither alter the truth underpinning this litigation, nor remedy the stark <u>absence</u> of any "jurisdictional facts" to support personal jurisdiction in this matter. On that score, Plaintiff's own responses/production to Defendant's discovery requests—and conspicuous lack of meaningful response/production thereto—highlights these truths/facts. *See* Pitt Supp. Decl., ¶¶ 2-4, Ex. 1, 2, and 3.  Be that as it may, the email correspondence with opposing counsel (*i.e.,* in response to the one Plaintiff attached to its Response Brief) is instructive: "Notwithstanding, as noted last week, it seems prudent from a cost perspective to avoid expensive discovery disputes and extensive depositions of Plaintiff's principals, employees, investors, and various third-parties, pending resolution of Defendant's Motion for Summary Judgment which will moot these matters." *Id.* at ¶ 2, Ex. 1.

[3] Specifically, Plaintiff (necessarily) already knows the <u>location</u> of its "existing/prospective" business relationships and that <u>no</u> facts exist that Ms. Schiappacasse engaged in any purported "interference" with <u>any</u> entities/persons, either <u>from Oregon</u> or located <u>in Oregon</u>.

is baseless), but also (2) the core deficiencies to Plaintiff's argument(s) seeking to manufacture

personal jurisdiction where none exists.

## II.  THE UNDISPUTED JURISDICTIONAL FACTS

When cleared of all the fog, the absence of requisite jurisdictional facts regarding

Plaintiff's claims for "tortious interference" is, as a corollary/intersection to that inquiry, laid

bare by Plaintiff's attempt to articulate its purported "damages" regarding such claims, arguing:

> "For purposes of this motion against Plaintiff's first cause of action [according to plaintiff comprised of two counts], Plaintiff puts forward four categories of damages. The undisputed facts section outlines 1) the declaration of Mary Beth Donalson, owner of Diversified Benefits Administrator supporting Veritas' claim that Defendant's actions caused Plaintiff to lose significant portions of her business, 2) the Leading Edge Administrators contract and termination letter, the financial invoices pertaining to the loss of the leading edge contract, 3) the financial damages incurred via the secretary of state filings, and 4) the labor and payroll costs incurred by Veritas in dealing with the S.O.S. registration."[4]

Aside from the evidentiary—and credibility—issues surrounding Plaintiff's proffers,[5]

they establish that Plaintiff _cannot_ identify any jurisdictionally relevant "suit-related" or "forum-

related" contacts—with the State of Oregon—_during/after_ the conference that occurred in

---

[4] (Pl. Resp., 18:10-16)

[5] By way of example and not limitation, the Declaration of Mary Beth Donalson ("Donalson")—attached as Exhibit 11 to the Declaration of Grant Engrav—should be viewed with extreme skepticism as it is nearly unintelligible/non-sensical. Although Donalson contends "[Vizzini] had been helping me grow my business," (Donalson Decl., Para. 2), and "[u]ntil September of last year [2022], I had never personally met this woman [Ms. Schiappacasse]," (Donalson Decl., Para. 4), yet somehow "[w]hile it shouldn't have, the comments made by Heather also made be question my relationship with Veritas.  David and his team are my friends, but I have to continue to remain objective when making decisions about my company.") (Donalson Decl., Para. 5). Moreover, nowhere does Ms. Donalson identify anything Ms. Schiappacasse is alleged to have said—or done for that matter—that remotely qualifies as "tortious interference" in her entire declaration. _See e.g._, Donalson Decl., Para. 2 ("In another instance, I was speaking with a friend who is no longer in the industry. She told me David is a 'piece of ****' and that I shouldn't be doing business with him. I told her it wasn't true.")

Page 3 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

Austin, Texas on October 2, 2021, and *pre-dating* the filing of Plaintiff's Complaint on December 16, 2021.

Stated directly, Plaintiff purports to invoke *only* two alleged "business relationships" which Ms. Schiappacasse allegedly interfered—*i.e.,* Diversified Benefits Administrators *and* Leading Edge Administrators—and the so-called "damages" arising from Ms. Free's registration of a *separate entity* with a nearly identical name with the Oregon Secretary of State, none of which supports personal jurisdiction or a continuation of this litigation in Oregon.

## A. Diversified Benefits Administrators—a Georgia company.

As reflected in Plaintiff's Response to Defendant's Interrogatory No. 4, Diversified Benefit Administrators ("DBA") is a Georgia company, located in Thomasville, Georgia.[6]

Moreover, neither the Donalson Declaration referred to above, nor Plaintiff's *other* proffers presents evidence of alleged tortious "interference," with DBA, occurring in the State of Oregon.[7]  As a point of fact, the opposite is true: all alleged matters pertaining to DBA necessarily occurred either in the State of Texas, or at *other* conferences/instances *outside* the State of Oregon.

/ / /

/ / /

/ / /

---

[6] Pitt Supp. Decl., ¶ 4; Ex. 3

[7] Declaration of Engrav, ¶ 2, Ex. 13—Barnes Decl., ¶4. ("Due to misrepresentations made by Ms. Schiappacasse during and immediately after the Self-Insurance Institute of America ("SHIA") conference, *which was held in Austin, Texas in October of 2021*, one of our largest clients, Mary Beth Donalson of Diversified Benefit Administrators cancelled a line of business previously being performed by Veritas Allies, resulting in financial losses of approximately $226,773.12") (emphasis supplied)

Page 4 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### B.  **Leading Edge Administrators—a New York company.**

So too with Leading Edge Administrators ("LEA"), which is a <u>New York</u> company, with

*<u>offices located in New York and Florida.</u>*  Although Plaintiff's Response Brief states that "Ex. 1

is a copy of the Agreement between Leading Edge Administrators and Veritas,"[8] that Exhibit is

actually a purported "Marketing Agreement" between <u>Equitas DX, LLC</u> and HC Consulting,

LLC, dated August 24, 2019, a date *<u>before</u>* Plaintiff was first organized/existing with the Oregon

Secretary of State on June 19, 2020.[9]

Moreover, attached to the Supplemental Declaration of Keith A. Pitt—filed under seal—

is the actual LEA contract—VERITAS 000078-000082, stamped by Plaintiff "Confidential

Subject to Protective Order"—again with <u>Equitas DX, LLC</u>, a *<u>separate entity</u>* from Plaintiff.[10]

Notwithstanding, there is <u>no</u> dispute that LEA is a <u>New York</u> entity with offices located

in <u>New York</u> and <u>Florida</u> only.[11] Once again, *<u>none</u>* of Plaintiff's proffers presents evidence of

alleged tortious "interference," <u>with LEA</u>, occurring in the State of Oregon.[12]  Rather, all alleged

---

[8] (Pl. Resp., Pg. 11:8-9)

[9] Pitt Supp. Decl., ¶ 7, Ex. 6 – Equitas DX, LLC registry with the Oregon Secretary of State, showing its date of organization as October 29, 2018, *predating* the existence of Plaintiff by almost 2 years. Plaintiff's loose invocation of purported agreements with *separate* entities and/or entities that predated Plaintiff's own existence reflects that Plaintiff likewise knows it simply cannot establish any "suit related" contact with the State of Oregon in relation to Plaintiff's actual/present claims against Ms. Schiappacasse.

[10] Pitt Supp. Decl., ¶ 6, Ex. 5–Leading Edge Administrators contract filed under seal. This document appears to also contain an internal "contractual" confidentiality provision, supporting its filing under seal.

[11] Pitt Supp. Decl., ¶ 5, Ex. 4 –Leading Edge Administrators "About Us" web page located at https://www.leadingedgeadmin.com/about-us/. *See also* Plaintiff's Exhibits 4 and 5 to the Grant Declaration, showing Leading Edge Administrators terminated its contract with <u>Equitas DX, LLC</u>, effective April 30, 2022, through its <u>New York</u> counsel.

[12] Declaration of Engrav, ¶ 2, Ex. 13—Barnes Decl., ¶4. ("Ms. Schiappacasse was also in contact with another of Veritas Allies [sic] [Equitas DX, LLC] largest clients at Leading Edge Administrators ("LEA"). LEA terminated its business with Veritas soon after having contact with Ms. Schiappacasse, despite just having signed a fourteen-month contract extension. The loss of business with LEA cost Veritas approximately $387,200.00 in lost revenue.")

matters pertaining to LEA necessarily occurred with an entity that is _not_ Plaintiff, and occurring either in the State of Texas, or at _other_ locations/instances _outside_ the State of Oregon.

### C. <u>Oregon Secretary of State—Alleged Injury Caused by Ms. Free.</u>

Plaintiff does not seriously attempt to dispute the allegations/claim, _as framed by Plaintiff in its Complaint_, pertaining to <u>Ms. Free's</u> organization of a new entity—under a nearly identical corporate name—with the Oregon Secretary of State, and which was undertaken by <u>Ms. Free</u> alone.[13]

Further still, Plaintiff does not begin to attempt to identify a cognizable legal theory—or damages attributable <u>to Ms. Schiappacasse</u>—to support that claim for relief <u>against Ms. Schiappacasse</u>.  Rather, Plaintiff broadly asserts its purported "combined worktime in relation to the underlying complaint," as a generalized proposition, but _untied_ to anything specifically attributable to Ms. Schiappacasse.[14]

Despite Plaintiff's attempt to locate (manufacture) jurisdictional facts upon which to support personal jurisdiction, there are simply none.  Therefore, as discussed further below, Plaintiff has no evidence—_and cannot not carry its burden_—establishing the matters alleged in Plaintiff's First or Second Claim for Relief either "arises out of" or "relates to" any alleged "suit-related" or "forum-related" conduct of Ms. Schiappacasse, requiring dismissal of this litigation.

/ / /

---

[13] Declaration of Engrav, ¶ 2, Ex. 13—Barnes Decl., ¶3 ("Since the date of filing the underlying complaint, I made several attempts to reinstate the registration of Veritas Allies, LLC.  My attempts failed because the business remained registered in the name of _**Cynthia Free**_ until June of 2022. The failed reinstatement attempts cost $200 and were non-refundable.") (Emphasis supplied)

[14] Declaration of Engrav, ¶ 2, Ex. 13—Barnes Decl., ¶2 ("As of the date of drafting this Declaration, my co-workers and I have spent approximately 240 hours of _**combined worktime in relation to the underlying complaint**_—these hours amount to $30,400.00 in costs to Veritas in employee wages.").

Page 6 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

### III.    ARGUMENT

**A.  <u>Plaintiff's First and Second Claims for Relief Should Be Dismissed for Lack of</u>**

**<u>Personal Jurisdiction</u>.**

Plaintiff misapprehends the applicable law in this matter, as well as ignores—and

misapplies—the jurisdictional and substantive law to the dipositive issues now before Court.

Although the analysis is overlapping, each is briefly addressed below.

### 1.    Applicable Federal Law—Post-*Walden*.

Although Plaintiff asserts it "accepts Defendant's outline of the three-prong test used by

the 9th Circuit"—and likewise acknowledges the "cases [Ms. Schiappacasse] cites are all on point

as well, albeit some more than others"[15]—Plaintiff's Response Brief omits any substantive

discussion of those cites/cases. Instead, Plaintiff seeks to avoid the well-established "shift" in

analysis identified in *Walden v. Fiore,* 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014),

arguing:

> "*Walden* provided a thorough analysis of the *Calder v. Jones* case, which is
> directly on point because the claims at issue were tort based. *Calder v. Jones*, 465
> US 783, 104 S Ct 1482, 79 Led2d (1984).  *** In this case, Defendant's actions are
> similarly [to Calder] calculated and targeted into Oregon, specifically her  many
> calls to Cynthia Free (Ex.2 and 8), Jean Gordon (Ex. 15), David Vizzini, other
> Veritas Staff (Ex. 8), her coordination with altering the Oregon Secretary of State
> Business Registration (Ex. 8), business contract with Veritas (Ex. 1), and targeting
> former employers of David Vizzini could hardly be more tailored towards the state
> she now objects to hosting the consequences backstopping her tortious actions.
>
> The Supreme Court found the 'crux' of *Calder* was the reputation-based
> effects of the alleged libel. *Id.* at 287. The present claims have a similar dynamic to
> *Calder,* but the nature of the intentional interference claim also must contemplate
> the tools that the Defendant used to bring about the harmful interference, and her

---

[15] Pl. Resp., Pg. 13:6-7

Page 7 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY
TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

target's location. Nearly all the tools, all outlined above, were Oregon based as was her target, Veritas and David Vizzini."[16]

Focusing entirely on *Calder*—which is, by Plaintiff's own admission, a libel case—Plaintiff *ignores* the proper mode of analysis that "depends, to a significant degree, on ***the specific type of tort*** or other wrongful conduct at issue."[17]

Here, the "specific type of tort" in *this* litigation is for an alleged "tortious interference," and where the required minimum contacts analysis—applicable to the alleged "tortious" conduct of Ms. Schiappacasse—is neither informed by the "crux" of *Calder,* nor is personal jurisdiction, over Ms. Schiappacasse, supported under *Walden* and the cases that follow.

First, it is well-established that *Walden* limited/narrowed the "effects test" from *Calder*[18] and, in any event, the jurisdictional facts attendant in *Calder*—and the *specific claim* for "libel"

---

[16] Pl. Resp., Pgs. 13-14:13-15, 1-13

[17] *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 807).

[18] *Smart Energy Today, Inc. v. Hoeft,* 2016 WL 8200432, *2 (C.D.Cal.2016) ("***But Walden refined the Calder holding***, ruling that a defendant's knowledge of the plaintiff's forum connections, even where the plaintiff suffered foreseeable harm in the forum, did not satisfy the minimum contacts requirement. Walden affirmed that the "unilateral activity" of a plaintiff in the forum state is insufficient grounds for personal jurisdiction over a defendant. ***Even absent Walden's narrowing of Calder, Plaintiff's reliance on Calder is misguided because Plaintiff alleges fewer contacts with California. In Calder, the defendant circulated more than half a million copies of a defamatory article [in California to California residents].***") (Emphasis supplied; bracketed language added); *Janus v. Freeman*, 840 Fed.Appx. 928, 930 (9thCir.2020) (Unpublished) ("Citing Calder, Janus contends that an "intentional tort," such as defamation, "knowingly directed at a forum resident satisfies the minimum contacts test." ***This overstates the holding of Calder, as clarified by the subsequent decision in Walden v. Fiore,*** 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). ***Under the correct standard***, we conclude that Janus failed to establish a prima facie case of purposeful direction as to Freeman's alleged defamatory activities. *** ***In Walden, the Court expressly rejected the view that Calder's effects test is satisfied merely by the defendant's commission of an intentional tort that is aimed at a person known to be a resident of the forum state.*** 571 U.S. at 289–90, 134 S.Ct. 1115. As the Court explained, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. ***The proper question*** is not where the plaintiff *experienced a particular injury or effect but whether the defendant's conduct connects **him to the forum in a meaningful way.**"*) (Emphasis supplied).

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

through "publications" there, _in California_, to over 500,000 _California residents_—are materially different than the facts/claims at bar.[19]

Second, Plaintiff ignores the _post-Walden_ cases issuing from the USDC of Oregon regarding the governing test(s),[20] and where the USDC of Oregon has noted the Constitutional test has materially shifted _post-Waldon_, requiring substantively <u>more</u> than an alleged knowledge of the Plaintiff's domicile and/or that Plaintiff would suffer an alleged "injury" in Oregon.[21]

---

[19] _Russell v. Samec_, 2020 WL 7048403, *4 (W.D.Wash.2020) ("To the extent that _Calder_ may be read as supporting that merely knowingly targeting a resident of the forum state (who will thus suffer harm in the forum state) is adequate to confer personal jurisdiction, ___however, more recent case law has limited Calder___. *** In 2014, in _Walden v. Fiore_, the Supreme Court concluded that the 'crux' of _Calder_ 'was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff.'). '[T]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an ___article for publication in California that was read by a large number of California citizens___.' The Walden court explained— 'In this way, the 'effects' caused by defendants' article—i.e., ___the injury to the plaintiff's reputation in the estimation of the___ <u>___California public___</u>—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts ___that gave the article a California focus___, sufficed to authorize the California court's exercise of jurisdiction.'") (Emphasis supplied).

[20] _Infusion Partners v. Otono Networks, Inc._, 2017 WL 1959225, *8-9 (D.Or.2017) ("The evidence required to establish ___purposeful direction___ usually centers on defendant's actions outside the forum state that are directed at the forum. *** ___Consequently, 'mere injury to a forum resident is not a sufficient connection to the forum.' 'The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'___ *** Infusion claims personal jurisdiction exists because Defendants knew Infusion's place of business was in Oregon and that their actions were likely to cause Infusion harm in Oregon. ___That Infusion may have suffered an injury in Oregon is insufficient to establish personal jurisdiction over Defendants. Infusion has failed to offer evidence Defendants purposefully directed actions toward the state of Oregon___. Again, ___having failed to meet the first prong of the test for personal jurisdiction, <u>the court need not, and will not, address the second or third prong with regard to Infusion's claim for tortious interference with business relationship</u>___. The court also lacks personal jurisdiction over Defendants with regard to Infusion's tort claim.") (Emphasis supplied).

[21] _Domaine Serene Vineyards Winery, Inc. v. Jacob Rieger & Co., LLC_, 2019 WL 1522881, *5 (D.Or.2019) ("___As plaintiff observes, the requirements for specific personal jurisdiction <u>shifted in the wake of Walden v. Fiore, 571 U.S. 277 (2014)</u>. *** The 'express aiming' element can no longer be established through allegations of willful conduct directed at a forum resident. In other words, 'the plaintiff cannot be the only link between the defendant and the forum.'___ _Walden_, 571 U.S. at 284-85. The minimum contacts analysis instead examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") (Emphasis supplied).

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

Third, Plaintiff ignores the jurisdictional reality that district courts throughout the Ninth Circuit routinely dismiss claims for "tortious interference" when a defendant's *only connection* to the forum is the fortuity of plaintiff's domicile alone.[22]

### 2. Analysis—Post-Walden.

When properly understood, the inquiry whether the forum may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"[23] Specific jurisdiction is limited to ruling on "***issues deriving from, or connected with, the very controversy* that establishes jurisdiction**."[24] Moreover, "[w]hen there is no such connection, ***specific jurisdiction is lacking regardless of the extent of a defendant's unconnected***

---

[22] *GPMI Company v. Michelin Lifestyle Limited*, 2022 WL 657352, *4-5 (D.Ariz.2022) (***Post-Walden courts tend to decline jurisdiction in intentional interference cases when a plaintiff's only showing of express aiming is that the out-of-state defendant's extra-forum actions caused harm to the plaintiff in the forum state.*** *See Indie Caps, LLC v. Ackerman*, No. CV-20-1970-PHX-DJH, 2021 WL 2352416, at *1 (D. Ariz. June 9, 2021) (Florida resident and Florida company allegedly persuaded non-Arizona resident to breach contract with Arizona company but otherwise had no contacts with Arizona); *Cayenne Med., Inc. v. Medshape, Inc.,* No. 14-cv-0451-HRH, 2015 WL 5363199, at *3 (D. Ariz. Sept. 15, 2015) (defendants caused several entities to breach their contracts with the plaintiff, but neither the defendants nor the entities were located in Arizona, and the alleged inducement took place outside of Arizona); ***Paragon Bioteck, Inc. v. Altaire Pharms., Inc., No. 15-cv-189-PK, 2015 WL 4253996, at *8 (D. Or. July 10, 2015)*** (defendant's alleged conduct consisted of ***"interfering with [plaintiff's] relationship with another out-of-state entity***; placing a 'credit hold' on [plaintiff's] account; and refusing to fulfill normal obligations" ***but the plaintiff's injury—related to its dealings with its business partners and regulators—was not "tethered to" the forum state "in any meaningful way beyond the fact that [plaintiff's] principal place of business" was in the forum state***); *Verbick v. Movement Tech. Co., Inc.,* No. 20-cv-611-TWR (DEB), 2021 WL 6804098, at *8 (S.D. Cal. Mar. 25, 2021) (allegation that defendants intentionally interfered with plaintiff's contract by coordinating with counterparty to force plaintiff to agree—under duress—to release counterparty from liability did not establish express aiming because defendants had no independent contacts with California beyond causing injury to plaintiff there)") (Emphasis supplied).

[23] *Walden v. Fiore,* 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).

[24] *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citation omitted).

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

_**activities in the State**_."[25] The court must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[26]

Here, Plaintiff's misplaced invocation of a series of alleged "pre-suit" activities (_i.e.,_ occurring _before_ October 2, 2021)—either with Plaintiff (Vizzini) or other persons/entities—are jurisdictionally irrelevant. So too with alleged post October 2, 2021 "communications" (whether through emails/texts/calls) involving Plaintiff (Vizzini) or other persons _(e.g.,_ Free, Gordon, _etc_.) who may reside in Oregon.[27]

Again, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."[28] However, when properly viewed in the context of the specific torts Plaintiff has alleged—_i.e.,_ "tortious interference" occurring between October 2, 2021 and December 16, 2021—Plaintiff has supplied _no_ evidence that jurisdictionally relevant conduct occurred in Oregon, and certainly _none_ regarding an alleged interference or "tortious conduct"

---

[25] _Bristol-Myers Squibb Co. v. Superior Ct. of California_, 137 S. Ct. 1771, 1781 (2017).

[26] _Walden_, 571 U.S. at 285, 134 S.Ct. 1115.

[27] _Kellytoy Worldwide, Inc. v. Jay at Play International Hong Kong Limited_, 2019 WL 8064196, * 5 (C.D.Cal.2019) ("Again, _Walden_ requires that jurisdiction must arise out of the contacts that 'defendant himself' creates with the forum State,' and not defendant's contacts with entities that do business or reside there. *** _**It follows that "a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction**_." (Emphasis supplied); _Infusion Partners v. Otono Networks, Inc_., 2017 WL 1959225, *8 (D.Or.2017), citing Wellpartner, Inc. v. DeLeon Pharm. Inc., 2015 WL 7568591 (D.Or.2015) (Noting, "'_**the Ninth Circuit has made clear that ordinary use of the mail, telephone, or other communications simply do not qualify as purposeful activity invoking the benefits and protections of the forum state**_.'") (Emphasis supplied); _Janus v. Freeman_, 840 Fed.Appx. 928, 931(9thCir.2020) (Unpublished) ("Janus emphasizes the allegations and evidence that Freeman _**corresponded over Facebook Messenger with employees of his company,**_ which Freeman knew to be based in California, and made defamatory comments in those posts_. **But the mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction under Walden.**_") (Emphasis supplied).

[28] _Walden_, 571 U.S. at 290, 134 S.Ct. 1115.

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

with the *specific non-Oregon* entities Plaintiff identifies (*i.e.,* Diversified Benefits Administrators and Leading Edge Administrators) discussed in Section II above.

In the final analysis, "to have specific jurisdiction over a defendant, '***the defendant's suit-related conduct must create a substantial connection with the forum State.***'"[29]  As Plaintiff has supplied no evidence supporting a "substantial connection" with Oregon regarding this matter— and cannot not carry its burden[30]— establishing that Ms. Schiappacasse "expressly aimed" any alleged "suit-related conduct" at the State of Oregon, the court should dismiss this litigation.[31]

**B.  Plaintiff's Second Claim for Relief Fail As A Matter Of Law In The Absence Of Any Cognizable Theory and/or Damages Attributable To Ms. Schiappacasse.**

Plaintiff's Response Brief simply ignores the substantive defects that inheres in the Second Claim for Relief. The reason is, respectfully, obvious. Plaintiff knows this claim is not viable. Plaintiff's failure to respond to those defects should be read as a concession for dismissal.

Stated succinctly again here, aside from a lack of cognizable damages resulting from an alleged "tortious interference" with a "corporate name" on the Oregon Secretary of State

---

[29] *Id.*

[30] *Morrill v. Scott Fin. Corp.,* 873 F.3d 1136, 1142 (9th Cir. 2017) ("'The plaintiff bears the burden of satisfying the first two prongs of the [specific jurisdiction] test. ***If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.***'") (citation omitted in original; emphasis supplied); *Adidas Am., Inc. v. Cougar Sport, Inc.,* 169 F. Supp. 3d 1079, 1084 (D. Or. 2016) ("[T]he plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper.")

[31] *Domaine Serene Vineyards Winery, Inc. v. Jacob Rieger & Co., LLC,* 2019 WL 1522881, *7 (D.Or.2019) ("Indeed, several judges within this District have granted motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) where the defendant had stronger forum connections. **** For instance, in Paragon [Bioteck, Inc. v. Altaire Pharm. Inc., 2015 WL 4253996 (D.Or.2015)], the plaintiff was a Nevada corporation with a principal place of business in Oregon while the defendant was a New York corporation with a principal place of business in New York. The Paragon court found that personal jurisdiction was lacking even though the plaintiff and defendant entered into a written agreement; the defendant repeatedly sent invoices and records to the plaintiff in Oregon; and the defendant's president attended shareholder meetings in Oregon.")

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

website, upon the dismissal of Ms. Free, with prejudice, from the State Court Litigation, what remains, against Ms. Schiappacasse, is tantamount to a standalone claim for "civil conspiracy" which fails as a matter of law.[32]

Again, even were the Court to find personal jurisdiction exists in connection with the Second Claim for Relief—which it should not—it fails due to the lack of a cognizable theory of recovery.

## CONCLUSION

For the preceding reasons, the Court should grant Ms. Schiappacasse's motions for summary judgment—dismiss Plaintiff's First and Second Claims for Relief—and put an end to this unfortunate litigation.


Dated: April 25, 2023.


SLINDE NELSON
By: _/s/ Keith A. Pitt_____
Philip Nelson, OSB No. 013650
phil@slindenelson.com
Keith A. Pitt, OSB No. 973725
keith@slindenelson.com
*Attorneys for Defendant Heather Schiappacasse*

---

[32] Under Oregon law, "neither 'conspiracy' nor 'aid and assist' is a separate theory of recovery." *Granewich v. Harding*, 329 Or 47, 53, 985 P.2d 788 (1999), *citing Bonds v. Landers*, 279 Or 169, 175, 566 P.2d 513 (1977); *Schmitz v. Mars, Inc.,* 261 F.Supp.2d 1226, 1233 (D.Or.2003) ("Under Oregon law, conspiracy is not a tort and does not give rise to a separate theory of recovery or an independent cause of action.").

Page 13 – **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>CERTIFICATION OF COMPLIANCE</u>

<u>Brief Length</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 4,436 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: April 25, 2023.

SLINDE NELSON
By:  /s/ Keith A. Pitt
Philip Nelson, OSB No. 013650
phil@slindenelson.com
Keith A. Pitt, OSB No. 973725
keith@slindenelson.com
*Attorneys for Defendant Heather Schiappacasse*

SLINDE NELSON
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT HEATHER SCHIAPPACASSE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on:

> Grant T. Engrav
> Engrav Law Office, LLP
> 1500 SW First Avenue, Suite 11700
> Portland, OR 97201

by the following indicated method(s):

☐   by **faxing** full, true, and correct copies thereof to said attorney to the fax number noted above, which is the last known fax number for said attorney, on the date set forth below.

☒   by **emailing** full, true, and correct copies thereof to said attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☐   by notice of electronic filing using the CM/ECF system (LR 100.7(a)(2)).

☐   by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address(es) listed above on the date set forth below.

DATED:  April 25, 2023.

> SLINDE NELSON
> By:  _/s/ Keith A. Pitt_
> Keith A. Pitt, OSB No. 973725
> keith@slindenelson.com
> *Attorneys for Defendant Heather*
> *Schiappacasse*

**SLINDE NELSON**
425 NW 10th Avenue, Suite 200
Portland, Oregon 97209
p. 503.417.7777; f. 503.417.4250