UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

VERITAS ALLIES LLC, an Oregon Limited
Liability Company,

        Plaintiff,

v.

HEATHER SCHIAPPACASSE, an individual,

        Defendant.

Case No. 3:22-cv-00903-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Veritas Allies, LLC, an Oregon company, has brought suit against defendant Heather Schiappacasse, alleging a claim of intentional interference with economic relations. Notice Removal, Ex. A ("Compl.") at 4, ECF 1. Currently pending is Schiappacasse's motion for summary judgment on personal jurisdiction. ECF 17. Because Schiappacasse is a Texas resident and plaintiff has not produced evidence establishing that Schiappacasse has the necessary minimum contacts with Oregon, the motion for summary judgment for lack of personal jurisdiction is granted and the case against Schiappacasse is dismissed without prejudice.

**I.    Background**

    David Vizzini, who is plaintiff's founder and chief executive officer, and Schiappacasse met at a health care industry conference sometime in 2017 or 2018.[1] Over the next several years,

---

[1] Engrav Decl., Ex. 8 (Schiappacasse Dep.) 36:4–16, ECF 22-1. Although the parties' briefing is not entirely clear on the point, both Vizzini and Schiappacasse are involved in or operate various

1 – OPINION AND ORDER

Vizzini and Schiappacasse talked often over the phone and would see each other at various conferences.[2] In 2019, a company in which Schiappacasse was involved entered into a marketing contract with another of Vizzini's companies, EquitasDx, LLC.[3] Around 2019 or 2020, Vizzini offered Schiappacasse a job at one of his companies, but she declined.[4] Around that same time, Vizzini was in the process of divorcing former defendant Cynthia Free; he and Schiappacasse often talked about the divorce and Vizzini's feelings about it.[5] Over time, Vizzini and Schiappacasse's "friendship . . . progress[ed]," and around July of 2021, they became involved in what Schiappacasse characterized as a romantic relationship.[6]

In October of 2021, both Schiappacasse and Vizzini attended the Self Insurance Institute of America conference in Austin, Texas.[7] At the conference Schiappacasse "conducted a business meeting" with plaintiff's executive team including Vizzini; at Vizzini's request, Schiappacasse had prepared a list of her clients that might be interested in hearing about plaintiff's products.[8] Later in the conference, Schiappacasse facilitated some introductions with potential clients.[9]

---

businesses that offer services to the health care industry. *See* Engrav Decl., Ex. 9 at 1, ECF 22-1 ("[Veritas] is an Oregon company . . . [that] provides highly complex, cost containment services to providers and payors operating in the health care industry.").
[2] Schiappacasse Dep. 78:3–23, ECF 22-1.
[3] *Id.* at 22:10–17; Engrav Decl., Ex. 1 at 1, 6, ECF 22-1. Plaintiff asserts that EquitasDx was a subsidiary of plaintiff, Resp. 4, ECF 22, but does not cite any evidence in the record establishing that fact. *See id.*
[4] Schiappacasse Dep. 81:9–25, ECF 22-1.
[5] *Id.* at 72:16–22, ECF 22-1; *id.* at 78:1–80:16.
[6] *Id.* at 80:5–16; Pitt Decl., Ex. 3 at 1, ECF 18.
[7] Schiappacasse Dep. 37:12–22, ECF 22-1; Compl. ¶ 4, ECF 1-1.
[8] Schiappacasse Dep. 40:15–41:23, ECF 22-1.
[9] *Id.* at 42:2–14, 54:14–23.

At some unspecified time during the conference, Schiappacasse learned that her relationship with Vizzini was not as it seemed.[10] The Complaint alleges that at the conference, Vizzini, Schiappacasse, and several other people were at the hotel bar when an argument of some kind broke out; Schiappacasse was allegedly intoxicated and announced that she was going to "embarrass" Vizzini and ruin his business.[11] Precisely what happened is not clear based on the evidence in the record, but suffice it to say, the relationship between Schiappacasse and Vizzini ended, and Schiappacasse's alleged efforts to make good on those threats are at the heart of the current dispute.

Plaintiff alleges that Schiappacasse tortiously interfered with its business relationships in two ways. First, Schiappacasse allegedly made false statements about plaintiff and Vizzini to others in the health care industry, which in turn caused plaintiff to lose current and prospective clients.[12] Specifically, plaintiff produced evidence that two companies, Diversified Benefit Administrators and Leading Edge Administrators, terminated or changed their working relationship with plaintiff based on Schiappacasse's statements or conduct, and plaintiff lost substantial revenue as a result.[13]

Second, plaintiff alleges that Schiappacasse coordinated with Vizzini's ex-wife Free to commandeer the entity name "Veritas Allies, LLC" to prevent plaintiff and Vizzini from using the name.[14] After the conference in Texas, Schiappacasse began a long-running correspondence with Free, who lived in Oregon.[15] The two bonded over a shared belief that Vizzini had

---

[10] *Id.* at 115:19–25, ECF 22-1; Schiappacasse Decl., Ex. 1 at 1, ECF 19.
[11] Compl. ¶¶ 7–10, ECF 1.
[12] *Id.* ¶¶ 14–18.
[13] *See* Resp. 10–12, ECF 22; Engrav Decl., Ex. 4 at 1, ECF 22-1; *id.*, Ex. 11 at 1–4, ECF 22-1.
[14] Compl. ¶¶ 19–23, ECF 1.
[15] *See* Schiappacasse Dep. 72:2–25, ECF 22-1.

mistreated them, and they communicated often, exchanging hundreds of texts and phone calls.[16] On October 8, 2021, Free texted a picture to Schiappacasse and wrote: "Look what I just did!!"[17] Free had noticed that "Veritas Allies, LLC." had been administratively dissolved by the Oregon Secretary of State on August 19, 2021, because Vizzini had apparently neglected to renew its business registration.[18] Free then registered her own entity, "Veritas Allies, LLC," which subsequently prevented Vizzini from renewing his original registration using the "Veritas Allies, LLC" name.[19] Schiappacasse responded, "You registered his LLC in your name?!? . . . OMG – THAT'S hysterical . . . He's going to FREAK the f[***] out."[20] Later, Schiappacasse asked Free, "How do we secure the Veritas Allies name [n]ationally?"[21] The two also discussed transferring the Veritas Allies name to Schiappacasse, though that never happened; Free eventually transferred the name back to Vizzini as part of the divorce settlement.[22]

Plaintiff initially filed this case in Oregon state court against both Free and Schiappacasse, who lives in Texas.[23] Schiappacasse moved to dismiss based on, among other things, a lack of personal jurisdiction.[24] Prior to the state court hearing on that motion, Vizzini and Free settled the divorce proceeding; as part of the agreement, Free transferred the "Veritas Allies, LLC" business name to Vizzini and Vizzini agreed to dismiss Free from the case.[25] The

---

[16] *Id.* at 156:7–19.
[17] Engrav Decl., Ex. 2 at 17, ECF 22-1.
[18] Pitt Decl., Ex. 4 at 11, ECF 18. The period at the end of the entity's name was included in the registration. *Id.*
[19] *See* Engrav Decl., Ex. 13 ¶ 3, ECF 22-1.
[20] *Id.*, Ex. 2 at 17–18, ECF 22-1.
[21] *Id.* at 24.
[22] Pitt Decl., Ex. 10 at 1–8, ECF 18.
[23] *Id.*, Ex. 2 at 4, ECF 18.
[24] *See* Engrav Decl., Ex. 9 at 1, ECF 22-1.
[25] Pitt Decl., Ex. 10 at 1–8, ECF 18.

4 – OPINION AND ORDER

Oregon state court denied Schiappacasse's motion to dismiss,[26] but Free's dismissal from the case created complete diversity, and Schiappacasse then removed the case to this court in June of 2022.[27] ECF 1. The parties engaged in a settlement conference in August of 2022, and then conducted discovery. ECF 11, 14. Schiappacasse then filed the currently pending motion for summary judgment on the basis that this court lacks personal jurisdiction and plaintiff's claims otherwise fail as a matter of law. Mot. Summ. J. 1–3, ECF 17.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing Fed. R. Civ. P. 56(e)). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue

---

[26] Engrav Decl., Ex. 14, ECF 22-1.
[27] The caption of the complaint mentions both intentional interference and defamation claims. At the hearing on the motion for summary judgment, plaintiff's counsel clarified that the defamation claim was asserted only against Free, who has since been dismissed from the case. *See* Pitt Decl., Ex. 10 at 4, ECF 18. Accordingly, the analysis here considers only plaintiff's intentional interference claims asserted against Schiappacasse.

are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot*, 780 F.3d at 1211 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see* Fed. R. Civ. P. 4(k)(1)(A). Oregon's long-arm statute is co-extensive with constitutional standards, and thus this court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4L); *Swank v. Terex Utilities, Inc.*, 274 Or. App. 47, 57 (2015).

Constitutional due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.' " *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)). That focus led to the recognition of two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction extends to "any and all claims" brought against a defendant, but a court may exercise general jurisdiction only when a defendant is "essentially at home" in the forum state. *Ford Motor*, 141 S. Ct. at 1024 (citation omitted). Individuals are subject to general jurisdiction in their place of domicile.

*Id.* (citing *Daimler AG*, 571 U.S. at 137). Defendant is domiciled in Texas, so there is no general jurisdiction in Oregon. Notice Removal ¶ 15, ECF 1.

Specific jurisdiction applies to a broader class of defendants than general jurisdiction, but only for a "narrower class of claims." *Ford Motor*, 141 S. Ct. at 1024. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (simplified). "Specifically, the defendant's suit-related conduct must create a substantial connection with the forum State" and the "primary concern is the burden on the defendant." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (simplified). The connection between the defendant, the forum, and the litigation must "arise out of contacts that the defendant . . . creates with the forum State." *Id.* (quoting *Bristol-Meyers Squibb*, 137 S. Ct. at 1780). "[T]he minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," meaning that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (simplified).

The Ninth Circuit employs a three-prong test for analyzing specific jurisdiction. First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Second, the claim must arise out of or relate to the defendant's forum-related activities, though a strict causal relationship is not required. *Id.*; *Ford Motor*, 141 S. Ct. at

7 – OPINION AND ORDER

1026. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Glob. Commodities*, 972 F.3d at 1107. The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If the first two prongs are met, the burden shifts to the defendant to establish the exercise of personal jurisdiction would not be reasonable. *Id.* "When defending against a summary judgment motion for lack of personal jurisdiction, Plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence." *Stoliarov v. Marshmello Creative, LLC*, No. 2:19-cv-03934-PSG-JPR, 2021 WL 1781870, at *2 (C.D. Cal. Apr. 7, 2021), *aff'd,* No. 21-55442, 2022 WL 819800 (9th Cir. Mar. 17, 2022) (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1293, 1396 & n.1 (9th Cir. 1986); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n.6 (9th Cir. 1977)).

Plaintiff's intentional interference with economic relations claim sounds in tort, and thus the Ninth Circuit's three-part "effects" test for purposeful direction applies. *Axiom Foods*, 874 F.3d at 1069 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "The defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (simplified). "[T]o establish the basis for specific personal jurisdiction [under *Calder*], a tort must involve the forum state itself, and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017).

The first element is not disputed. Rather, the primary focus of the arguments raised by Schiappacasse's motion is whether plaintiff can show that Schiappacasse "expressly aimed" any tortious conduct at Oregon. *See* Mot. Summ. J. 11–12, ECF 17; Resp. 14–16, ECF 22; Reply 10–12, ECF 27. The crux of plaintiff's argument for personal jurisdiction is that Schiappacasse

"purposefully directed her activity towards Oregon" by "targeting" Vizzini's businesses, including plaintiff, by contacting plaintiff's clients and making disparaging comments about Vizzini in an attempt to convince those clients to stop doing business with him, and Schiappacasse's substantial text messages and phone calls with Free, in which Schiappacasse repeatedly expressed her intention to "ruin [Vizzini's] business "and "get him out of the industry once and for all," among other similar sentiments. Resp. 14–15, ECF 22.

However, following the Supreme Court's decision in *Walden*, "courts tend to decline jurisdiction in intentional interference cases when a plaintiff's only showing of express aiming is that the out-of-state defendant's extra-forum actions caused harm to the plaintiff in the forum state." Mot. Summ. J. 11 n.42, ECF 17 (quoting *GPMI Co. v. Michelin Lifestyle Ltd.*, No. 2:21-cv-00299-GMS, 2022 WL 657352, at *4 (D. Ariz. Mar. 4, 2022) (collecting cases); *see also Control Sols., Inc. v. MicroDAQ.com, Inc.*, 126 F. Supp. 3d 1182, 1191 (D. Or. 2015) (explaining that, after *Walden*, "express aiming at a forum resident is jurisdictionally relevant only insofar as it constitutes a single contact with the forum state, and is insufficient without more to satisfy the express aiming requirement, which requires contacts created by the defendant directly with the forum state, and not merely with a forum-state resident"). The specific business relationships that plaintiff has identified as damaged by Schiappacasse's alleged actions are with companies not based in Oregon. Diversified Benefits Administrators is located in Thomasville, Georgia, and Leading Edge Administrators is a New York entity with offices in New York and Florida, and there is no evidence in the record that either company conducts any business in Oregon.[28] Schiappacasse's acts were directed at these entities, and thus the only tie these acts have to Oregon is that plaintiff's principal place of business is in Oregon, which is insufficient

---

[28] Pitt Supp. Decl.*,* Ex. 3 at 4, ECF 28; *id.*, Ex. 4 at 1, ECF 28.

9 – OPINION AND ORDER

under *Walden* to establish personal jurisdiction over Schiappacasse here. *See Paragon Bioteck, Inc. v. Altaire Pharms., Inc.*, No. 3:15-cv-00189-PK, 2015 WL 4253996, at *8 (D. Or. July 10, 2015) (declining to find specific jurisdiction where the "allegedly tortious conduct consists of interfering with [plaintiff's] relationship with another out-of-state entity" because the injury was not "tethered to Oregon in any meaningful way beyond the fact that [plaintiff's] principal place of business is in Oregon"); *Infusion Partners v. Otono Networks, Inc.*, No. 3:16-cv-2288-AC, 2017 WL 1959225, at *8–9 (D. Or. Apr. 12, 2017), *report and recommendation adopted,* No. 3:16-cv-02288-AC, 2017 WL 1960661 (D. Or. May 9, 2017) ("[Plaintiff] claims personal jurisdiction exists because [d]efendant knew [plaintiff's] place of business was in Oregon and that their actions were likely to cause . . . harm in Oregon. That [plaintiff] may have suffered an injury in Oregon is insufficient to establish personal jurisdiction[.]").

As for Schiappacasse's communication with Free or another Oregon resident with ties to Vizzini[29], those texts and emails, even if numerous, are insufficient to establish personal jurisdiction over Schiappacasse. *See* Resp. 8, ECF 22; *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("The making of telephone calls and the sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant."); *Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 964 (W.D. Wash. 2022) (same); *Morrill*, 873 F.3d at 1144 ("Any links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email . . . occurred only because it happened to be where Plaintiffs resided."); *cf. Adidas Am., Inc. v. Bobosky*, No. 3:10-cv-00603-PK, 2010 WL 4365795, at *5 (D. Or. Oct. 8, 2010), *report and recommendation*

---

[29] This individual's name is not important to the analysis and intentionally omitted from this decision.

10 – OPINION AND ORDER

*adopted,* No. 3:10-cv-00603-PK, 2010 WL 4364609 (D. Or. Oct. 28, 2010) ("Further, even lengthy exchanges of business documents and communications with an entity in the forum state does not constitute purposeful availment."). Moreover, Schiappacasse's text and phone conversations with Free and the other Oregon resident are not the allegedly tortious acts that plaintiff claims caused it harm; rather, it was the statements Schiappacasse made to out-of-state companies that purportedly led those companies to terminate or change their business relationship with plaintiff. Those latter acts and statements were directed entirely at places other than Oregon and thus do not create any jurisdictionally relevant contacts with Oregon. *See Walden*, 571 U.S. at 290 (2014) ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) (finding no personal jurisdiction because "discussions [with people in California] did not enable or contribute to the promotion activities that actually gave rise to the law suit. The intentional acts that allegedly harmed [the plaintiff] . . . . were directed entirely at markets in the United Kingdom and Ireland").

To the extent Schiappacasse's statements to Free and the other Oregon resident could be characterized as expressing an intent to engage in allegedly tortious conduct in other states, that does not create a jurisdictionally relevant contact with Oregon. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) ("Express aiming is an ill-defined concept that we have taken to mean something more than a foreign act with foreseeable effects in the forum state.") (simplified). Nor does Schiappacasse's communications with Free about Free's act of

11 – OPINION AND ORDER

registering the "Veritas Allies, LLC" business name in her own name create a relevant contact for personal jurisdiction over Schippacasse. For one, the undisputed evidence in the record shows that Free alone actually acquired the business name without prompting from Schiappacasse, and this unilateral act of a third party cannot be the basis of personal jurisdiction over Schippacasse.[30] *Ha v. Gulick*, 567 F. Supp. 3d 1267, 1270 (D. Or. 2021) ("For an exercise of jurisdiction to be proper, minimum contacts must proximately result from actions by the defendant . . . not the unilateral activity of a plaintiff or a third person.") (simplified) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). And plaintiff has not adequately explained how Schiappacasse's statements expressing some satisfaction in Free's actions, or discussing potential future plans with Free as to what the two might do with the business name, caused plaintiff any harm or is any way connected with plaintiff's claim for economic interference based on the business name registration, which could only be brought against Free and not Schiappacasse. *See Axiom Foods*, 874 F.3d at 1069 (explaining that the "purposeful direction test" requires the plaintiff to show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state") (citation omitted).

    None of the other facts plaintiff has raised changes the conclusion that this court lacks personal jurisdiction over Schiappacasse. Plaintiff asserts that Schiappacasse "consummated" a transaction with plaintiff, Resp. 15, ECF 22, but the evidence shows that it was Schiappacasse's company and not Schiappacasse herself, that entered into a contract with EquitasDx, a different

---

[30] Engrav Decl., Ex. 2 at 17–18, ECF 22-1.

one of Vizzini's businesses in August of 2019.[31] "Personal jurisdiction over an individual who acts as an agent of a third party [such as a corporation] must be assessed on the individual's actions alone," *Glob. Commodities*, 972 F.3d at 1109, and plaintiff has not alleged, much less produced, any evidence showing that Schiappacasse and her company are alter egos such that the company's contacts with Oregon could be imputed to Schiappacasse for jurisdictional purposes. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 51–52 (N.D. Cal. 2020) ("[U]nder the federal law governing the exercise of personal jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may pierce the corporate veil jurisdictionally and attribute 'contacts' accordingly.") (simplified). Other facts are similarly irrelevant to the jurisdictional analysis. Schiappacasse apparently planned a visit to Oregon to meet with Free and others, but the trip never happened.[32] Vizzini offered Schiappacasse a job with one of his companies, but she declined.[33] Schiappacasse "came close" to investing in one of Vizzini's business, Resp. 16, ECF 22, but decided against it.[34] None of these are actual contacts with Oregon. Plaintiff also suggests that Schiappacasse contacted one of Vizzini's former employers based in Oregon, but the evidence plaintiff cited in support of that assertion does not establish that Schiappacasse actually made that contact. Resp. 7, ECF 22; *id.* at 14.

In sum, the only relevant contacts plaintiff has established are (1) the injury it suffered in Oregon when it allegedly lost two clients, and (2) Schiappacasse's phone and text

---

[31] *Id.*, Ex. 1 at 1–7, ECF 22-1.
[32] Schiappacasse Dep. 167:21–168:13, ECF 22-1.
[33] *Id.* at 81:9–25.
[34] *Id.* at 59:22–60:14.

13 – OPINION AND ORDER

correspondence with two Oregon residents. These limited contacts are insufficient to establish personal jurisdiction over Schiappacasse in Oregon for this case.

## ORDER

Defendant Heather Schiappacasse's Motion for Summary Judgment on Personal Jurisdiction (ECF 17) is granted. This action against defendant Schiappacasse is dismissed without prejudice.

DATED October 5, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge